Mr. Rogers, this case on adopted 2-15-0 and 8-9 of the people of the state of Illinois, Plaintiff Appellee v. Gregory Hernandez, defendant of felony. On behalf of the defendant's cousin, Mr. Paul A. Conner, on behalf of Plaintiff Appellee, Mr. Edward Daniels, defendant. Okay, Mr. Rogers. I just want to make a comment that Justice Sjogrenson is indisclosed. She will listen to the oral argument and participate in the decision. You may proceed. Thank you. Good morning. I may please record the counsel. My name is Paul Rogers. I'm from the State Appellate Defender's Office, and I am here representing Gregory Hernandez. I intend to address both questions at issue in this appeal. As this Court, I'm sure, realizes these questions are related. The first question, which is addressed in the original brief, is whether the trial court abused its discretion by denying the defendant's request to represent himself during the second stage post-conviction proceedings. The second question, which this Court raises, which is addressed in the supplemental briefs, is whether the State is entitled to the $50 appeal fee under the Illinois Supreme Court's decision in Nichols. As I said, these questions are related. They are related because if the answer to the first question is yes, then Mr. Hernandez is entitled to relief, and there's no fee even under Nichols. Now, I've argued that Nichols is no longer good law, so that there's no fee even if the answer to the first question is no, but I'm not here just to say Mr. Hernandez, $50. So I would like to address the first issue and explain why the trial court abused its discretion by denying it. Does this record seem confusing to you in the sense that it just seemed to go like the game, I think it's called pong, or the defendant kept bouncing back and forth between representation and nonrepresentation? Well, there was some of that, but I think I would dispute the degree to which there was going back and forth. If you look at the record carefully, I'm sure you have. And write a list or updates down. There's only one time when the defendant made a request to discharge his attorney while the state's motion to dismiss was pending, and that was when he discharged Mr. Kerkelis back in July of 2013, I think it was. And that was while it was pending the state's motion to dismiss, I think it had been argued, the motion to dismiss is an amended petition that Mr. Kerkelis had filed in the interim between the argument on the motion and the ruling the defendant asked to discharge Mr. Kerkelis. The court agreed to that and let Mr. Hernandez represent himself. Well, didn't the defendant ask to go pro se back in October of 12, and then when the attorney agreed to file an amended post-conviction petition, he withdrew that request? Right, he did, and that's, I think, a not unusual situation where clients often have disagreements with counsel or misunderstandings or suspicions about appointing counsel, frankly, in general. Well, you know, I wrote down the dates. Right. What occurs to me is every time a motion to dismiss was on the horizon, your client did something. He either asked for a new attorney or a representative himself, wanted his attorney to file a different petition, withdrew the petition completely after the argument on the motion to dismiss. Right. And then in the last episode, the motion to dismiss was due July 23rd from the state, and then he filed the motion at issue here on July 17th. So it just seems like every time a motion to dismiss was on the horizon, he was trying to extend this out. Well, that's an interpretation of the facts, and that gets to what his intent was, and dilatory intent is one reason for denying a request for self-representation. I would make a couple points here, or maybe more than a couple. First, there's a difference between dilatory intent and dilatory effect. And if you look at the effect, obviously, of asking the second time when he asked to discharge Ms. Maples, that would have had the effect of causing some delay or could have had an effect of causing some delay in the proceedings. But that doesn't necessarily mean that that was his intent to do that. And Mr. Hernandez was concerned that Ms. Maples, his appointed counsel, first of all, he was concerned that she hadn't incorporated all of his pro se claims, which turned out to be false. She had. But he was also concerned that she had not provided enough supporting documentation to back up some of his claims, especially the claims relating to getting an independent expert for the DNA and for the fingerprint analysis. And that concern actually turned out to be prescient and well-founded because when the amended PC that Ms. Maples filed was eventually dismissed, the trial court relied in part on the lack of documentation. So I think Mr. Hernandez had a genuine concern that he wasn't being adequately represented, and that was his motivation for the request that's at issue here, the request that came in, I guess it was July or August of 2014. Also keep in mind that Mr. Hernandez wasn't present for the hearing on either his motion to discharge Ms. Maples or on his motion to reconsider the denial of that first request. So he wasn't in a position where he could explain directly to the court why he was asking to do this, nor was the court taking advantage of a situation where it could avoid an undue delay by essentially keeping Mr. Hernandez on a short leash, telling him in no uncertain terms, you are not going to be allowed to change your mind again. If you're going to go pro se now, you're going to go pro se forever. I'm going to give you only X amount of time to file an amended pleading or to ask for an expert to be appointed or whatever is appropriate to do, and I'm going to hold you to those deadlines and get the case back on track and expedite it. The court could have done that, but, I mean, we're looking at whether what the court actually did and when in the record was an abuse of discretion. That's correct, and I think when you take the totality of the circumstances, it wasn't an abuse of discretion because of the reasons that I just explained, that I think Mr. Hernandez did have legitimate concerns about the lack of supporting documentation and wasn't given an opportunity to really explain why he wanted to represent himself. And strictly speaking, I don't know that an individual needs a specific reason to represent himself. He just needs to want to represent himself. All he needs to be able to do is to be able to make a knowing and intelligent waiver, to be competent to make the waiver of counsel. There's no question about it. Once a defendant expresses that desire, assuming he's competent to waive counsel, there's no question of whether it's a wise decision or whether it's proven or anything like that. I don't know that he said it specifically, but hypothetically, if he said, I want to be, I want to proceed, pro se, because my counsel failed to include all my arguments when in fact that was wrong, then do we have a counterfactual conditional such that his statement that he wishes to proceed on his own is a false conclusion or an unreasonable conclusion or a conclusion upon which a trial court seeing the contradiction or inconsistency would say, I'm sorry, but if you are so ignorant or naive or unenlightened to think that your counsel hasn't covered all the issues that you want to raise, you're really not competent to argue pro se. Well, although if you have a right, I think you can exercise it even if you're incompetent, can't you? Well, incompetent in the sense of not being a competent advocate, but competent in the sense of I'm not talking about mental state of mind. To answer Your Honor's question, I would say if that had been his only complaint, that Ms. Maples is not incorporating all of my pro se claims, then the argument for abuse of discretion would certainly be weak. But that's not what we have here. And that's why I think it's significant that Mr. Nandis wasn't present for the argument on that motion. I think it would have been appropriate and reasonable and even necessary for the court to bring Mr. Hernandez to court after he filed the first motion to discharge Ms. Maples and represent himself. Ms. Maples expressed her concern. I think she said, it's not exact, but I think it's pretty close. I think we ought to have him here for the hearing on this. And the trial judge himself said, I'm reluctant to proceed on this without him here. The judge's reason for denying the motion without the defendant being present was partly because of his mistake as to whether Ms. Maples had included his pro se claims, but also there was a colloquy with the prosecutor in which the prosecutor argued and I think ultimately persuaded the court, this is just a delaying tactic. Now, that's where the significance of the second motion, the motion to reconsider, comes into play, because there you have more information that this isn't just a delaying tactic. I'm concerned that I'm not getting the representation I want. It may be reasonable to pass the standard of 651, but it's not as good as I want, and I think I can do better, and I'm entitled to do that. And that's where the abuse of discretion comes into play when you put all those factors together. I won't rehash all of the other reasons that I've set forth in the brief. I would direct the court's attention to the Gray case, which I'm sure you're aware of. As I've argued, I think this case compares favorably to Gray in that the reasons for granting a request for self-representation here are at least as strong as in Gray. The only thing I'll say more about that issue is the question of prejudice. I've argued that it's structural error comparing this to or analogizing this to denial of self-representation at trial, which is structural error. You would agree that the appellate court in Gray hung its hat on the fact that the counsel refused to include the pro se claims. That was the defendant's motive for wanting to discharge counsel, but I don't think that's dispositive because the point is, are there any grounds that justify denying a request to exercise this right? The right is not absolute. There are, by my count, four reasons why you can deny a request. Either you're not competent to make a valid waiver of counsel, the request to proceed without counsel isn't clear and unequivocal, there's an intent to delay or obstruct, and the request is so tardy as to disrupt the orderly schedule of proceedings. I think what that means is cause an undue delay, and I don't think any of those factors exist here. What happened in Gray was, while represented by counsel, the defendant there kept filing pro se amended petitions himself, and counsel ultimately refused to adopt any of those. Excuse me. Counsel asked to withdraw the state move to strike the pro se claims, and the trial court granted that motion. So it's true that the reason in Gray was different, but I think you still come out with the same result here, and then you have someone who's made a valid request, a non-equivocal request to, quote, fire his post-conviction attorney, and there are no legitimate reasons for the court to have denied that, or the reasons that were given were insufficient, I think, to justify the ruling. As we begin to address the question of prejudice, I talk about structural error in the briefs that talked about how the alternative, if it's not structural error, it can't be dismissed as harmless because the defendant's concern, as I mentioned before, was that there wasn't enough evidence here to back up his claim about the DNA evidence and the fingerprint evidence being unreliable, and that went to the heart of the case, the question of identification. So for those reasons, I ask this court to grant relief based on the first argument, remand the cause for further proceedings, and accordingly not grant any fee. Now, assuming that this court disagrees with that conclusion, I will address the appeal fee question, and that question really comes down to, is the 1978 Supreme Court decision in Nichols still good law? I can't deny that Nichols, on its face, is on point. It granted a fee in an unsuccessful appeal in order to deny a post-conviction petition. Who was the fee assessed against? It was assessed against the appellant.  They vacated the habeas corpus fees for lack of an affidavit or certification. How do you reconcile the vacation of habeas corpus fees if it's a post-conviction petition under the Act? How do I? I'm sorry, I don't quite understand your question. The case says that he filed a post-conviction petition, but if you read Nichols closely, you'll see that they vacated fees under the habeas corpus section. Now, why would they be vacating fees under the habeas corpus section when supposedly he filed a post-conviction petition? Well, I don't know why the court would do that if that seems like a contradiction. And to be honest, I... What were the holdings in Nichols? Well, there were multiple holdings, but the one I think that's relevant here, what is the broad question, as I took it, is whether the defendant's entitled, I'm sorry, whether the state's entitled to an appeal fee where there's an unsuccessful post-conviction appeal. I know there were multiple defendants. And what was the ratio decedendi of Nichols? It looked to the statute allowing for the collection of state service fees. It looked beyond that to the statute. But it looked, did it not, were the assessment of fees based upon the affirmance of a conviction? Yes. And is the granting or denying of a post-conviction petition, in granting the petition a reversal and therefore fees are not entitled? I'll rephrase the question because this is really not material. If the post-conviction petition is denied, has it been your experience that the credal portion of a disposition filed by the Second District says the conviction is affirmed? It doesn't say the conviction is affirmed. It says the order dismissing or denying a petition is affirmed. Yes, that's correct. And I think there's a difference. In practical terms, it leaves the conviction standing. Actually, legally, it leaves the conviction standing. What's your response to the state's argument that this is a distinction without a difference? The distinction between? Between an affirmance of a conviction by a defendant vis-a-vis a grant of fees based upon an affirmance of a denial of a civil collateral post-conviction petition. I think it's the distinction that makes all the difference because when you have, say, a direct appeal and someone is challenging their conviction, then this court's order of affirmance will say judgment affirmed and that judgment is a judgment of conviction. As Your Honor, I think, was alluding to, if I understood you correctly, in a case like this, the order would say judgment dismissing post-conviction petition affirmed. Now, that means the conviction stands, but it's not affirming the conviction. The conviction has already been affirmed. What does a post-conviction petition attempt to do? The post-conviction petition attempts to show that the proceedings that led to the conviction were tainted by a constitutional error. And therefore, the conviction should be vacated. That would be the result of winning a post-conviction petition. So the result of losing it is not affirming the conviction? It's, again, it leaves the conviction in place, but legally it's not affirming the conviction. Well, I mean, this is all, you know, I mean, let me just ask you to get to the bottom line here, is Nichols has not been reversed, correct? I mean, it's not... Expressedly reversed. None of the cases say we are reversing our stance on Nichols. No, there's no case that says that. This court, as recently as July, as the state's pointed out, and I think even after that, hasn't relied on Nichols. And every district in the state has, correct? As far as I know, yes. Has anyone ever, to your knowledge, raised this issue before citing Johnson and W.W. to not apply these things? Not to my knowledge, no. W.W. was 1983? Correct. And Johnson was 2013. And I think Johnson, and I know I'm over time here, but Johnson, I think, is especially significant because there you have, as I read the case, the Supreme Court saying you can get trial fees for habeas cases. So the question then became, well, what counts as a habeas case? In that case, it was a 1401 petition. It said, 1401 petition does not count as a habeas case. And it went on to say, neither are any other kind of collateral proceedings, including post-conviction petitions. So under Johnson, it seems to me, you can't get, the state can't get a trial fee in a post-conviction case, and it would be anomalous to say that it can get a fee for doing an appeal in a post-conviction case when it couldn't have gotten the fee for appearing in the trial form. Are Johnson and Nichols reconcilable? Can Johnson be the logical conclusion or extrapolation of Nichols in any way, shape, or form? I don't see how, unless you're willing to accept the conclusion that it is permissible, that it makes sense to deny the state the per diem fee in the trial court for appearing on a post-conviction proceeding, but grant it in an appeal in a post-conviction proceeding. But Johnson talked, I mean, Johnson, the statute in Johnson was, basically said, I'm sorry, explicitly said habeas. And so the court said, if the legislature says habeas for the trial fees, that's what you get. Of course, the legislature didn't say habeas on the $50 fee, correct? No, they didn't. It said any appeal of any conviction. That's true. If you read the statute literally, it said affirmance of any conviction. It didn't say the appeal of any conviction. It was an unsuccessful appeal. That's true. But, again, I just go back to, Nichols said more than that. In explaining his holding, it said, we read habeas corpus literally. It means it doesn't apply to any other kind of collateral proceeding. In that context, they were talking about the trial fee. But, again, to my mind, that would leave the result of, you can't get the trial fee in a post-conviction case, but you can get the appeal fee in a post-conviction case. Did the court buy the argument that the legislature intended to collect fees for 214-01 and, hypothetically, post-conviction petitions? In Johnson? Yes. I don't believe they did, no. Do you know what they used to suggest that it was wrong or that it shouldn't be done? Well, they took the strict definition of what habeas meant. They also took the strict definition of what they're supposed to interpret the statute to mean. Right. In other words, it's supposed to be narrowly construed. Exactly. Right. Right. Yes. Unless there are more questions, I know I'm running out of time. Thank you. I appreciate it. You'll have an opportunity to make a vote. Thank you. Good morning, Your Honors. My name is Randy Busenica, Assistant State's Attorney for DuPage County. I represent the people of this matter. Counsel. May it please the Court. On the issue raised by the defendant in this brief, there are three reasons you can affirm the trial court's decision in this case, each of them independent of the other. As you pointed out, Justice DeClarin, your analogy to the game of Pong was apt regarding defendant's vacillations between going pro se and wanting counsel. That was a basis the trial court relied upon, and that's a basis to deny his request to go pro se. It's an abuse of discretion standard, the most deferential standard we have. A separate basis is the fact that in his third motion to go pro se. Did you ever play Pong? I did. Did you notice that sometimes the blip unequivocally goes past your paddle? Oh, it does need to be on the second or third time for me. Okay. So the second basis, third request made to go pro se. He hinged it upon his allegation that Attorney Maples did not incorporate his pro se claims. She did. So it was a counterfactual statement made by the defendant, and it was an independent basis for the court to deny his request to go pro se. And the third basis is we're not talking about a constitutional right. We're not talking about a structural error. We're talking about a statutory right subject to harmless error, and there was just so much evidence seduced against this defendant. I covered it in my brief. I don't think I need to repeat it here. Counsel argued the defendant's complaints that Attorney Maples didn't include sufficient documentation. Right. That was made in his fourth motion to go pro se, which was after the court had already denied his ability to go pro se. And the defendant had ample opportunity to provide documentation himself for these claims. He's filed three separate post-conviction petitions. If there was some evidence to be garnered at some place, he could at least have mentioned where he might have gone in these petitions. We have the 651C affidavits by two attorneys saying that they did everything they could to preempt his post-conviction claims and that there's no evidence. We have to assume that there was no evidence to be had. And the claims that he's talking about, if bears mentioning what claims he's talking about, he's talking about DNA on the jacket that was his DNA that would link him to the crime because the victim's blood was on that jacket. We already have his brother saying, yes, it's the defendant's jacket. He testified to that at trial. And we also have the defendant's own admission that it was his jacket because he argued that his brother didn't have the authority to consent to the jacket seizure because it was his. So the DNA is this superfluous evidence that it was his jacket. So the July 17, 2014, motion for self-representation only alleges that Attorney Maples didn't put his claims in there. That's right. That was denied, and then he filed basically a motion. A motion to reconsider, exactly. And that had the new claims of it. Exactly. So the DNA evidence is, you know, a serious red herring. And then with regard to the fingerprint evidence, Judge Garin didn't dismiss the claim for lack of supporting affidavits. He dismissed the claim because there was so much other evidence of this defendant's identity at the scene that the fingerprint evidence, he assumed it wasn't there. He said that counsel may have been unreasonable for not testing the fingerprint evidence, but there's no prejudice under Strickling because there was so much other evidence that this defendant did it. If there are no other questions about the main issue raised by defendant, I'll turn to the issue you asked us to brief. In my supplemental brief, I argued stare decisis. I was a little reluctant to do it because you all asked us to brief it, but I think it's a fair point. As you pointed out, Justice Burke, for 40 years we've been getting this fee in cases, including cases denying post-conviction relief. And for the arguments that have been voiced here, I really think it's an argument for a PLA. Justice McClain, the points you're raising are really saying that Nichols was improperly decided. Well, let's put it this way. If a collateral proceeding is, in fact, a collateral proceeding, it does not affirm the conviction. And if it doesn't, then the ratio decedende that it was contained in Nichols is erroneous. Now, I have to follow the holding, but I think I have the right to question the ratio decedende. And when Johnson shows up and suggests that the ratio decedende is wrong, then I think implicitly Nichols is overruled. Right. That sounds to me like a concurrence in a judgment saying, hey, Supreme Court, Nichols was wrong and this is going to be right for a PLA. Well, in WW, the Supreme Court told them that the statute should be strictly construed, that juvenile respondents are not defendants, these are not criminal proceedings, this is not a criminal conviction, this is not a criminal appeal, there's no affirmation of a conviction. And then it said if the legislature wants to, it can pass legislation. And the legislature passed legislation that doesn't cover everything that's proceeding, every proceeding in juvenile court. It only covered delinquency and dependency. It didn't cover, I'm not even sure that minors in need of supervision is still there, okay? But in any event, I think it was not dependency but neglect. But the point is, the assessment of fees under the juvenile court does not cover every proceeding. And it talks about a $20 fee per proceeding and it says nothing about appeals. So if it's strictly construed, WW reverts an assessment of an appeal in a juvenile court case and said if the legislature wanted to assess fees, which I think if they wanted to assess fees on appeal, they could also say assessment of fees on any appeal from the juvenile court or they could say assessment of fees on appeals from the two that they already defined. So in WW, it's a case where it gave the legislature an opportunity and the legislature didn't, quote, unquote, give the state's attorney full shrift or carte blanche. It only gave it partial release. And Johnson says if you want to collect fees in these proceedings, then put it in the statute. Now, did you ever read any ratio de sedenda in Nichols relative to why the the affirmance of the post-condition fee was appropriate? To be quite honest, no, Your Honor. Did it ever occur to you that it was based upon the holding and the ratio de sedenda that related to the argument on appeal, that it was based upon the fact that because these defendants were indigent, they shouldn't have to pay the fee? And if they found in the negative or if they didn't buy the defendant's arguments, then it would seem to follow like night is day and then you'll be true to or you'll be false to no man, that the fees would be affirmed because they were claiming they shouldn't be affirmed because we're indigent. And they're also claiming, because Williams, I believe, cited Nichols for the proposition, that the assessment of fees is appropriate if the state is able to affirm or have affirmed one of several or numerous convictions. So it wasn't a you've got to win every single conviction. You only have to win one. Right. And so those are the two major holdings in Nichols. And those two major holdings factually were established to be true. And therefore, it follows that if there is no other ratio de sedenda other than a statement that it's affirmed on conviction, there is no real rationale or holding relative to why an assessment of fees in a collateral proceeding should be upheld. Now, can you respond to that? You don't have to. No, I understand your frustration, Your Honor, but we have Nichols. It's the Supreme Court. I was not in the Supreme Court. Did you ever see in Nichols any statement that a collateral proceeding is, in fact, an affirmation of a conviction? No. It's not in there. No. So it's kind of like an infamy. The premise that is presumed to be true is that a collateral proceeding is really a direct appeal or the equivalent of a direct appeal. And even Nichols says that the statute should be strictly construed. The issue that they cite in Nichols that they cite as the issue raised by the defendant was whether the State's attorney fee for defending an unsuccessful appeal by a convicted criminal defendant may be assessed as costs. I mean, is this an appeal by a convicted criminal defendant? It is. It is. And later on in the case, it talks about against an unsuccessful criminal appellate, again, it says append, affirmance of his conviction, but it says unsuccessful criminal appellate. Is this person, unlike a juvenile, is this person a criminal appellate? He is. A juvenile appellate? A civil appellate? He is. He's not a juvenile appellate or a civil appellate. I mean, if W.W. talks about any one of them. Then why would in Johnson they tell the legislature that if they want to collect fees, they should put it in the statute? Because if Nichols is right, it supposedly is implicitly in the statute already. That's the real problem, Justice McClary. Nichols has been around for 40 years, and the legislature hasn't touched it. That's really the issue. They did now. They repealed it. Well, it's always worth questioning. Well, it's always worth questioning. How long did Brent Scott last? That might not be an analogy. Well, my point was, as if stare decisis was applicable, and if Brent Scott lasted from roughly around before the Civil War until the 40s or 50s, that sounds at least as long as this. Who ruled on Brent Scott? Who overruled Brent Scott? The U.S. Supreme Court. Right. So, I mean, your argument is this is an Illinois Supreme Court. It's a U.S. Supreme Court. It is. It is. There's no question about that. If there are no other questions. No, I have none. Thank you. Mr. Rogers. To start off, can you comment on the fact that your client didn't raise the issue of the documentation in his motion to proceed pro se? The only thing he claimed in the one that was originally denied by Judge Guerin was, you know, about the, you're not raising his pro se claims. And Judge Guerin made sure that Ms. Maples was raising his pro se claims. And then, you know, certainly that's a valid basis to deny that motion, is it not? It would be. And I will comment on that. That gets back to what I was talking about in my opening remarks, and that is that you have to, if you, first of all, Mr. Hernandez isn't there to elaborate on his reasons. And second, when he files a motion to reconsider, he brings that other issue to the court's attention. Now, whether he would have said that had he been present at the original hearing or not, we'll never know because he wasn't there. Why he left it out in his first petition, we don't know that either because he wasn't given a chance to explain why did you leave it out. Now, another point to make in that connection is that, these are related, I think, that the DNA evidence is red herring because you had all the other evidence. But the point is, the defendant was also challenging, in addition to the DNA evidence, the print evidence, and the victim's identification. That that should have, that the motion to suppress that should have been granted. That that was ineffective assistance by appellate counsel. Now, the fingerprint evidence, I believe the state said that the trial court relied only on harmless error in rejecting that. But I'm going to read from, this is page 1582 and 1583 of the transcript, and the court is talking about the fingerprint evidence. In the allegation that counsel should have obtained an independent fingerprint examiner, I agree with the state's response on that. The mere allegation that trial counsel did not obtain independent experts without demonstrating how the result would have been different is insufficient and should not be a basis for granting an evidentiary hearing. To me, that sounds like the court saying, if there had been an affidavit from an independent expert, maybe I'd rule differently. The state also pointed out, or argued, well, this was, the defendant had a chance before this to get his own independent expert. While he was represented by counsel, the defendant cannot file a pro se motion asking the court, please appoint me an independent expert to help me with my post-conviction petition. The court's response, I'm sure, would be, talk to your lawyer about that and see if she'll do it for you, or represent yourself. Well, that's what he's asking to do, is to represent himself. Why? In part, because he wanted the chance to get an independent expert. And there's law that says the trial court at least has discretion to appoint an independent expert for a defendant in a post-conviction proceeding. He filed several pro se petitions before Ms. Maples filed hers, correct? He filed the original pro se petition. He only filed two pro se petitions, if I recall. One back in 2005, which started everything, was basically put on hold while recensing was pending. And then when he withdrew that... He withdrew that, and he filed a second. He filed two. And when he was given leave to file the second one, he wasn't told, when you do this, when you discharge Mr. Kerkelis and are given leave to file a pro se petition, a new pro se petition, I'm counting that as a waiver of counsel. So when he filed his second pro se petition, which he did within two months, even though he had a year to do it, he asked for counsel to be appointed. He got counsel, other than Mr. Kerkelis. We know the rest of the history. But I don't think that's a situation where you can hold that against him. The first one, he had to file by himself, because he doesn't have a right to get anybody to do it for him, and he's indigent. And the second one, essentially the same situation. You're right that he doesn't have a right, but he could have hired someone. He's indigent. I mean, in theory, I could file it by a family, but I know I can't. In my experience, family will retain the right of counsel. Sometimes, but I don't... My point is, is that it is possible that a licensed attorney can file the initial petition. Oh, it's certainly possible, but I think in this case, that would be unrealistic. At the risk of... You can finish. Pardon me? You can finish if you have any further comment, because you didn't get a chance to reflect anything relating to the fees. Well, yeah, I just have one comment about that. And really, just to reinforce, I think, what Your Honor has already realized, but that is that in Nichols, the court itself recognized that that statute, that they described it as a relic that deserved legislative attention. The legislature, as you point out, never amended it to specifically allow a fee in these kind of cases, even after WW, and has now repealed it. And I think one of the problems with Nichols is that, and I think the state following Nichols essentially conflates the idea of an unsuccessful appeal by a convicted defendant with the idea of affirming a conviction. Those aren't the same thing, and it's only the latter in which you can get the fee. So, having said that, I would ask the court to grant the ruling by request. Thank you. Well, there will be a short recess. We have another case to call.